to case number 5, and that is number 14-3809 Stark Excavating v. Perez. Hello, Ms. Oki. Good early morning.  My name is Julia O'Keefe, and I represent the appellant, Stark Excavating. We are here today on the appeal of a decision of the United States Occupational Safety and Health Review Commission that is directly contrary to the record evidence, and therefore not supported by substantial evidence, and also not in accordance with law. The review commission in this case discarded completely the most important part of the evidence of the case, and that was Stark Borman's explanation of the reason why, in excavation, why he didn't notice that it was not in compliance. Stark Excavating is a construction company in Peoria, Illinois. In June 2008, it had a small crew digging a hole to replace a fire hydrant. An excavator dug a hole. An employee went in, in the presence of a foreman, Jason Shoup. An OSHA inspector came in and did an OSHA inspection, and concluded that the excavation was not properly protected from cave-in potential. Stark appealed that citation, and a hearing was held in front of an administrative law judge. At that hearing, the foreman testified. The foreman said, when the employee went in, the foreman was not paying close enough attention to the way the excavation looked. He did not notice, and was not aware, prior to OSHA's arrival, that it was not in compliance. And there was testimony about the measurements that were taken by the OSHA inspector. There were only two walls of excavation. Ms. O'Neill, wouldn't it be apparent to Shoup, even without a measuring device here, that the slope exceeded 45 degrees, given that it was 60 to 80 degrees, and therefore not even close to the required slope? And given that substantial difference, and his knowledge of the soil type that morning, how can we say that the Commission lacked substantial evidence to conclude that he knew, or deliberately avoided knowledge of the violation? Your Honor, only two out of four walls of the excavation were measured. So it would be inaccurate to say that all of the walls were out of compliance. The inspector himself testified he didn't know about two of the walls that he didn't measure. We had three measurements from two different walls, and those places that were measured OSHA found out of compliance. And we're here, we acknowledge that it wasn't in compliance. But it wasn't so pervasive, and the excavation was an oval shape. There was not a clear plane that one could look down and see what the excavation looked like. It was uneven. It was 6 1⁄2 feet in some areas and 8 feet in others. There are inspection files that are part of the record, Your Honor. But Mr. Shoup testified that he was watching the employee. It was a very short period of time, up to 10 minutes, and he simply didn't notice that the walls were not properly slipped. That's his version. Could I ask you, Ms. O'Keefe, about what seems to me a fairly critical factual matter? The ALJ said, in addition, the record demonstrates a reasonable effort by the respondent to slope the excavation as opposed to not taking any steps at all to slope the walls. What evidence supported that observation? Your Honor, what my understanding is that the walls were sloped. They were not properly sloped. They weren't even close, right? I mean, the minute hand on that clock is now at about 75 degrees off the horizontal. Two and a half minutes before noon. That's not even close to 45. So what was the reasonable effort? Again, I can only come back to the actual conditions. It was the conditions that existed where there was some sloping, and we don't know the measurements. Okay, so if that's the best defense that can be made for the ALJ's observation, the Commission's rejection of that finding, and particularly noting that there was no record basis for this observation, seems like a pretty good reason to discount the ALJ's credibility finding. What's wrong with that? Well, Your Honor, because the administrative law judge had the opportunity to observe, assess Mr. Shoup testifying, and he concluded that Mr. Shoup, in fact, was not aware. Of course. In the course of making that finding, the ALJ also makes this completely baseless reference to a reasonable effort to slope the excavation. And here it's pretty clear under the law, I thought, and under our decision, is it Alice Chalmers, the Fifth Circuit in Kelly-Springfield, the Second Circuit in Pratt & Whitney, that it's really the Commission's job to make the ultimate credibility call here. Your Honor, I would say the Pratt & Whitney case, the court, and that was the Second Circuit case, the court acknowledged that the administrative law judge's decision is part of the record. Right. So that would have to be considered. So under universal camera, it's a little fuzzy. Yes. What that role is, but it's still the Commission that has the ultimate authority, and here the Commission has explained a basis for rejecting that credibility finding. They have the ultimate responsibility, and again, the administrative law judge's decision is part of the record. Where the administrative law judge and the Commission disagree, the evidence supporting the Commission would be less substantial. In your view, would the circumstantial evidence before the ALJ have permitted a finding of willfulness, despite Shoup's denials? No, in light of the assessment. They had to believe him? No, he did not have to believe him, but he did believe him. That's my question. Because the point is that I think that your position, in essence, requires us, for us to reverse, to treat the ALJ's credibility finding as binding on the Commission. Not binding, but worthy of substantial and significant weight. As we do, the individual who has the opportunity to observe the witness, we do give substantial deference to that person's ability to assess witness. But back to your original question. But in the final analysis, isn't it the Commission that occupies the role of a fact finder here? I certainly have never seen any support for the proposition that it's, that the Commission has to give total deference to an ALJ's credibility findings. I agree. They do not have to give total deference. I think it is worthy of substantial deference. And even the Alice Chalmers case, there was a very short reference to the Commission not being bound, the court not being bound by the administrative law judge. But in that case, the issue was that there was not directly conflicting evidence the way there was here. And back to your Honor's original question. If the court chose to disregard Mr. Shoup's testimony, I suppose there would be a potential basis to affirm a willful. We've got, could you also address the, let's see, was it Inspector Clayton? Have I got that name right? Inspector Armstrong. Armstrong, sorry. Armstrong's testimony about what Shoup told him, which as I look at it, why can't you fairly read that as saying that Shoup told him that he had in fact realized there was a problem? Well, your Honor, in light of the evidence that the Secretary relied upon at trial to contend that Shoup was aware prior to and acknowledged being aware prior to the OSHA inspection, it was consistent with that where statements, alleged statements, were taken out of context. Mr. Shoup signed a document two months after the fact where the word corrected. I did not have the excavation corrected to try, and OSHA tried to use that to show his state of mind from before OSHA arrived. And so in light of the very fleeting reference by Mr. Armstrong, to me I don't think it was compelling enough to overcome the individual's live testimony. There's a time period here that I'm curious about at least, and that is, I guess this is an eight-foot deep trench? Six-and-a-half to eight-foot deep, yes. At the time of the encounter with OSHA, there's somebody down at the bottom trying to cut the pipe. Yes. So he didn't dig the ditch, obviously. No, it was an excavator. In one of the photographs, in some of the inspection photographs, you can see the excavating machine. Okay, so I've seen them from a distance. I've observed one once. It was sort of a backhoe type of situation, and they pull it out. But how long was this there? Because when you have those kinds of things, and when you have an eight-foot ditch, they're not there 24 hours a day. And there may be kids around, or there may be security, or somebody may get down in that or fall into that situation. So there's an external danger as well as the immediate danger, I guess. I understand. And I don't know what the facts are of this case. They were in a hurry. We know that. So maybe they just did the trench in a hurry and got the guy down there. And I don't know anything about the fire hydrant or the proximity to, what, Starbucks or something? Yes. Yeah, about how wide an avenue you have to go at this angle. And we don't know all that. And then we have a situation between wilfulness and maybe good faith, I guess. Yes. And, Your Honor, the excavation was created that morning, so it was never unattended. So it's a one-day event. Yes. Very short term. Okay. And the project was time and material, so the company placed no pressure on Mr. Shoup to hurry, but he said he was in a hurry. Okay. And there are two people standing there. Does that mitigate it in any way about safety? Well, Mr. Shoup was there, and an employee was in the excavation, and somebody came up right at the time OSHA arrived. But it was Mr. Shoup. It was only his knowledge that was at issue, because he was the only one who had been there for any time. So I do think it's relevant in the short-term nature of the project and all those kinds of things, I think, to mitigate. Thank you. Thank you, Ms. O'Keefe. Thank you. Hello, Ms. Wilson. Hello. Please, the Court, Lisa Wilson on behalf of the Secretary of Labor. As the Court correctly recognizes, this is a case to determine whether there is substantial evidence to support the decision of the Occupational Safety and Health Review Commission. And in this case, there clearly is substantial evidence to support their decision. If we can briefly look at what Foreman Shoup did on that day, he had specific training in the excavation requirements. He was a competent person under the standard, which means a person who knows the standard and has authority to make corrections in a situation. He came up to this trench that is widely out of compliance. It was two walls. Stark is correct about that. But they were between 60 and 80 degrees when they were required to be 45 degrees. He investigated this trench by approaching it and taking a soil sample so that he could assess the cohesiveness of the soil. And his test revealed it was type B, which is intermediate cohesiveness, requiring the 45-degree angle. He filled out a form, the Excavation Competent Person Daily Report. The top of this form says, check whether your soil is type A, B, or C. He did that. The bottom of the form says, if sloping or benching is used, it tells you the angle that you have to use. He filled out the top part, B, but he never did the second half of that. After he typed the soil, he did nothing else to protect the soil. He didn't fill out this form. He did not measure the walls. He did not use any other kind of protection. But then he nevertheless sent the employee into the trench. He was working at the bottom of the trench on the pipe. And then while he was working, Mr. Shoup stood there and watched the employee while he was doing the work. In light of all that, as well as his somewhat inconsistent statements about whether he knew that the walls were out of trench, the commission properly found that he knew that the walls, being so obviously out of compliance, were, in fact, out of compliance, or at least he deliberately avoided knowing because it was so obvious. You know, you argue in the brief that reckless behavior amounts to willfulness. Did you present that theory to the commission, or is that being argued here for the first time? We argued to the ALJ that his conduct was either intentionally disregarding the standard or was plain indifference to the standard. Judge Posner's recent decision in Duquesne precast, which just happened this year, clarifies that plain indifference really means recklessness. At the risk of taking thunder from other members of the panel, I would say the decisions are decisions of the court, no matter who writes them. Thank you, Your Honor. Of course, you are correct. That was a published decision of the court earlier this year, finding that the recklessness does qualify as willful, and that recklessness under the OSH Act includes awareness of the risk, knowledge it was serious, knowledge that he knew he could take effective measures to avoid it, and then the lack of taking those steps to avoid it. And in this case, we think it's clear he was aware of the risk, both because of his training. Foreman Shoup knew the dangers of trenches and the high risk of cave-in that they present, and he had to know in this case that this trench was, in fact, out of compliance. What about the good faith issue? I'm just curious where the line would be drawn in that situation, because they at least offer that as a possibility. I think the fines were two of them, weren't there? What is it? I forget the number. Is it $60,000 or $80,000? Yes, Your Honor. The penalty for this violation was $60,000. $60,000? Yes. It was something about $20,000. What was that? Or am I missing that? When this case was before the ALJ and the Commission, there were several items in dispute, and I think one of those repeat items had a penalty of $20,000. Would that have been something, a good faith or something? Would it be a lesser penalty? Is that – am I missing that, or is that – Yes. Good faith in the context of this willful violation, and willfuls can range in penalty from $5,000 to $70,000. It's not just about the penalty. Actually, their argument is that good faith would render the conduct non-willful. But in this case, A, there's no argument that what Ms. Formanshoe did that particular day demonstrated any good faith. You know, there is kind of a defense under the Act for, you know, genuine but mistaken beliefs that some condition is in compliance. But in this case, there's no argument even that Formanshoe was in good faith on that particular day. And in Laddish-Malting, the court held that there's no generic good faith under the OCT Act, and it's really about good faith at the particular incident. Is this kind of almost a strict liability situation? Let's assume that it's just a guy in there digging, and OSHA comes along and looks at this and sees it's very dangerous and whatever, that it's just a violation and that's it, or does it have to get into degrees of knowledge and violation? Is it just the fact that this had very steep walls and it's a deep thing, and if it does cave in, somebody's in really bad shape? Your Honor, there is no strict liability under the OSH Act. Knowledge has to be proved for serious violations, and additionally for willful violations, there's a requirement for heightened awareness of the standard. Something, I don't know, about reckless or intentional or something like that? Yes, there must be a heightened awareness of the requirements of the standard, and then the conduct must be intentionally disregarding or showing plain indifference to the requirements of the standard. So I guess when he said they were in a hurry, they looked at this and said, we've got to get this done in a hurry. The trench is narrow. If we make it wider, it's not going to be done in a hurry, and I guess that goes into the calculation, I guess. It does. There's no particular motivation that's required to find a willfulness state of mind, but in this case, yeah, he was in a hurry, and that's clearly why he was not taking the steps he needed to to make the trench safe. So if I could for a moment. I'm sorry? I guess I would be grateful, counsel, if you could address what you think are the strongest indications from the inspector that Shoup acknowledged that he recognized the violation before the inspector arrived. When the inspector approached the trench, he talked to Mr. Shoup right then as he approached, and the inspector testified that Shoup told him he recognized the slope was not in compliance, but he wanted to go ahead and proceed with his work. So I guess my question is how clear is it from the inspector's testimony that Shoup was acknowledging he had recognized the problem before the inspector arrived? All of us can appreciate the situation. If you accept Shoup's testimony, I was in a hurry, I wasn't paying attention, the inspector arrived, I looked at it, slapped my forehead, you idiot, I've made a mistake. But obviously we've got findings to the contrary effect based on circumstantial evidence and also based on the inspector's testimony. And so I'm asking, at least to me, my first reading of the inspector's testimony indicated it was ambiguous on this point. So if you could clarify, I'd appreciate it. I think that's a fair reading, Your Honor. You know, it was a complex trial with many different items that were at trial at that point. There have been commission cases that have found, for instance, Fiori, that when a person admits during the inspection, yes, you know, I know it's in violation, that has been found to be a basis of willful knowledge. So I don't think that the inspector was focusing on the nuance of when he said, you know, I recognize it's not in compliance, whether he was referring to that moment or, you know, the few minutes before there when the inspector, before the inspector arrived. And in fact, the words that he used in the past tense, I think it could be somewhat ambiguous. Okay. What weight do you think we need to give the ALJ's factual finding on this critical point, in light of universal camera and other case law? Well, as the Court pointed out, it is the commission that is the ultimate fact finder, but it is the ALJ who does see the witnesses. So I think it is, you know, reasonable to look at obviously what the ALJ said and to see the strength behind it. But in this particular case, I don't think that the ALJ's decision really deserves very much weight at all. Because as the commission explained, the situation here was so severe and so obvious that it's simply not credible that Mr. Shoup would not have known that the trench was in violation. I see that my time is up, unless the Court has any more questions. Thank you.  Ms. O'Keefe, you had used your time, but come on up and we'll give you another two minutes. I wanted to speak briefly to the good faith issue. The good faith defense raised by Stark is one that has been recognized by the Review Commission, and it is not a generalized good faith. That's how it has been referred to in the Secretary's brief. It is, did Stark make a good faith effort to comply with the standard? And what the Review Commission has looked at is, what steps did the employer put in place prior to the day of the incident to ensure that the standard would be complied with? We know it wasn't complied with at Peoria, at the Peoria site. But there was a lot of evidence offered and introduced about a Stark safety program, how it implemented an excavation safety program, a disciplinary program, and inspected projects to make sure that they were in compliance. And so it's those steps leading up. It's not a generalized good faith. It's a good faith effort to comply with the standard. Thank you so very much to both Ms. O'Keefe and Ms. Wilson.